40 C.C.P.A. (Patents)

### Application of SCHUELKE.
### Patent Appeal No. 5954.

United States Court of Customs and Patent Appeals.

Feb. 6, 1953.

---

Harvey B. Jacobson, Washington, D. C. (S. A. Stricklett, Washington, D. C., of counsel), for appellant.

, E. L. Reynolds, Washington, D. C., for Commissioner of Patents.

Before GARRETT, Chief Judge, and O'CONNELL, JOHNSON, WORLEY, and COLE, Judges.

COLE, Judge.

We are concerned here with an attachment for barber tools claimed to be a new and useful improvement originated and first invented by the appellant. Application to the Patent Office praying that a patent issue therefor was made and after appropriate proceedings thereon, the Board of Appeals affirmed the examiner's rejection of the only claims remaining in the case, Nos. 9 to 15, inclusive. That decision is the basis for this appeal.

During the oral argument before this court, the appeal from the decision of the board rejecting claims Nos. 9, 13, and 14 was withdrawn and motion was made by the appellant's attorney to dismiss the same. Accordingly, claims 10, 11, 12, and 15 remain as the only ones before us. They are in the following language which is quite descriptive:

"10. A barber's tool comprising a pair of blades, each having a cutting edge, a pivot pin detachably connecting said blades, an elongated receptacle conforming to the shape of one of said blades and having an opening in one side disposed adjacent the cutting edge of the blade on which the same is applied, an opening in said receptacle receiving said pivot pin for retaining said receptacle relative to said pair of shears, and means for supporting said receptacle entirely on one of said blades.

"11. In combination with a blade having a cutting edge, an elongated receptacle conforming to the shape of the blade, a first clip at one end of said receptacle yieldingly embracing one end of the blade, a further clip carried by the other end of the receptacle yieldingly embracing the blade, said receptacle having a longitudinal opening in one side disposed adjacent the cutting edge of the blade and having an air vent at one end, said receptacle being supported solely by said blade.

"12. In combination with a blade having a cutting edge, an elongated receptacle conforming to the shape of the blade, a first clip at one end of said receptacle yieldingly embracing one end of the blade, a further clip carried by the other end of the receptacle yieldingly embracing the blade, said receptacle having a longitudinal opening in one side disposed adjacent the cutting edge of the blade and having an air vent at one end, said receptacle being supported solely by said blade, said air vent being disposed adjacent said further clip.

"15. An attachment for barber's tools comprising an elongated relatively flat and hollow receptacle having first and second end portions, the first end portion of said receptacle being tapered, the second end portion of said receptacle being curved and having an air vent therein, said receptacle having an elongated opening in one side, a first attaching arm at the tapered end portion of said receptacle, and a second attaching arm at the curved end portion of said receptacle, the curved end portion of said receptacle having an aperture therein adapted to receive the pivot pin of a pair of shears."

Claims 10, 11, and 12 obviously apply to the attachment affixed to a barber's tool, while claim 15 defines the attachment as such. The sole reference relied upon in rejecting the claims in question is the patent to the inventor La Mere (No. 2,292,453, issued August 11, 1942). The patent to Kaufmann, to which we will subsequently refer, issued February 22, 1927 (No. 1,618,-713).

Having the benefit of a most thorough and painstaking analysis by the officials of

the United States Patent Office and the discussion thereof by the attorney for the appellant, it is not difficult with the involved patent applications and accompanying illustrations before us to understand what is involved. The gamut run by the applicant left little unsaid in his behalf. This experience included a rejection in part of the original claim because of the Kaufmann reference, not now of consequence, and objection by the examiner with appropriate reasons to other phases thereof; amendments by the applicant in response thereto with more detailed descriptive remarks and modification to some extent of the setup first presented; action thereon by the examiner, presenting for the first time the La Mere reference, which with further reliance on the Kaufmann patent resulted in total rejection of all claims. This was met with further amendments to the application, including cancellation of a number of claims and the addition of others. The remarks attached thereto discussed at length, in addition to previous approach in the same direction, the claims as then framed along with appellant's version of the Kaufmann and La Mere patents. Again the examiner reasoned against the applicant in what was termed his final action. Additional amendments followed which were entered for the purpose of placing the case in proper form for appeal to the Board of Appeals. A lengthy brief by the applicant was addressed to the board in which almost every conceivable phase of the controversy was set forth. The art and the claims, including those subsequently withdrawn before us as indicated, were discussed and applicant's conception thereof as contradistinguished from that found by the examiner was presented, considerable attention being given to the La Mere reference. The primary examiner added a further comment to his original decision, which was evidently influenced by the arguments made to the board therein. Here the board appears with its decision from which we quote to this extent:

"The patent to La Mere discloses, in Figs. 11, 12 and 13, a hair suction disposal attachment in combination with a conventional pair of scissors. It includes an elongated receptacle 74 mounted on the upper scissor blade 72 so as to present an opening running longitudinally to the blade, clip means 77 and 78 projecting laterally therefrom adjacent its ends detachably securing it to the blade member, and an air vent at its rear and to which a flexible suction tube 76 is attached.

"The claims stand rejected as being unpatentable over the La Mere patent. While the Examiner recognizes that there is a difference in structure between the hair disposal attachment defined in the appealed claims and that disclosed by the reference patent, he feels that the line of reasoning used by the Courts in In re Rodman et al., 161 F.2d 232 [34 C.C.P.A., Patents, 1051], and In re Hittson, 636 O.G. 690, 85 USPQ 244 is just as applicable to the state of facts involved in this case; namely, that it is obvious to one skilled in the art with the reference patent before him to modify the reference structure in the manner called for by the appealed claims without the exercise of invention.

"Appellant contends that the reference patent does not disclose the structure recited in the claims and therefore fails as an anticipation of the structure defined and the features capable of being accomplished by said structure.

"Upon making a careful analysis of the subject matter defined in the appealed claims, we have reached the conclusion that the structure disclosed by the reference patent is the mechanical equivalent of appellant's structure. It appears to us that said two hair disposal attachments do substantially the same work when mounted on a barber's tool in substantially the same way and accomplish substantially the same results, and that the differences in structure merely involve features that cannot be patentably differentiated from each other. * * * Claim 10 specifies

that the receptacle is provided with an opening adapted to receive the pivot pin of the barber's tool for the purpose of retaining the receptacle relative to the pair of shears. Said specific retaining means is not disclosed by La Mere but he does disclose retaining means 77 and 78 for the same purpose which appear to us to be the full mechanical equivalent. Claim 11 defines the 'further clip carried by the other end of the receptacle yieldingly embracing the blade.' The specific relationship of the 'further clip' and blade as defined in this claim is not disclosed by La Mere but, in our opinion, it discloses an equivalent structural relationship in the further clip or support 77 connected to the handle 70 of the blade 72. The structure recited in claim 12 is substantially the same as that recited in claim 11. * * * The attachment defined in claims 14 and 15, in our opinion, is equivalent to that disclosed by La Mere. In fact claim 14 reads substantially on the La Mere attachment. The structure recited in claim 15 can be differentiated from the La Mere structure only in view of the fact that the second end portion of the receptacle is curved and has an aperture in said portion adapted to receive the pivot of a pair of shears, however, we fail to find any patentable significance involved in the curved end portion. To us, its presence in the structure merely indicates a matter of choice or mechanical expediency on the part of appellant. We agree with the Examiner that the subject matter defined in the appealed claims does not reflect a display of uncommon talent or creative genius that amounts to invention in view of the disclosure in the La Mere patent."

The primary purpose of the described attachments, when shears and clippers are used in cutting hair, is to draw loose hair into a receptacle and finally into a vacuum bag. One reference, La Mere, as indicated was relied upon by the board. This reference clearly has a suction disposal attachment. It is described as an invention relating to cutting or clipping devices and more particularly to instruments for use in cutting and trimming hair.

The following from the La Mere reference is thought to be significant:

"The time-honored method of cutting the hair on human heads is to trim certain portions of the head with scissors and other portions thereof with clippers. The scissors are hand-operated and in most cases today the clippers are mechanically driven from an electric motor. In order to prevent the cut-off hair ends from dropping down the neck of the customer a large cloth is draped around his shoulders and tucked in at the neck. Also many barber shops and beauty shops use neck bands which are strips of gauze or paper wrapped around the neck at the point where the cloth is tucked into the collar. Even these precautions do not prevent the hair from working down inside the collar and the discomfort from the short cut off pieces of hair is considerable.

* * * * * *

"One of the objects of my invention is to provide means in conjunction with a hair cutting instrument which will immediately pick up and withdraw all cut off hair ends to a suitable waste receptacle and which will prevent any of the cut off ends from falling down the neck of the customer. This means can be adapted for use in connection with various types of cutting devices such as scissors and clippers and dry shavers.

* * * * * *

"Another object of the invention is to provide hair suction means for removing the cut off hair ends and to utilize this suction for driving the blades of a clipper.

"Still another object of the invention is to provide a clipper device and hair suction means associated therewith in such a manner that the clipper can be used for the entire hair cutting operation and wherein the time required for cutting the hair is very materially reduced."

Appellant argues against the La Mere patent because of the difficulty or impossibility one would find in using certain attachments on the scissors with the attending interference occasioned by the hand of the operator. Looking at the exhibits before us and the specific member and clip Nos. 34 and 77, respectively, which have been referred to, it is impossible for us to conceive just how such mechanism would so interfere. Such operation was determined by the board to be merely a matter of mechanical skill and design. We find no difficulty in agreeing with this conclusion. Likewise it is contended that parts designated as clips, specifically Nos. 78 and 81, would catch in the patron's hair. If such is the case, and we are of course unable to do more than speculate on such reasoning, there is, we find, a clear similarity in the clips complained of and those of a similar nature found in appellant's application, Nos. 48 and 54, respectively. Other objections to the La Mere patent directed especially to the valve thereon are based upon the theory that such device would interfere with the proper operation of the scissors. This likewise is claimed properly to be speculative. As stated in the brief for the commissioner, even if it is assumed that appellant's device in its entirety constituted an inventive improvement over La Mere, such would not justify the allowance of claims which did not clearly point out the features in which the improvement lies. Certainly there can be no dispute as to the accuracy of this statement. The solicitor for the commissioner has briefly, and we think convincingly, covered this thought in his brief from which we quote in the order of the claims, *supra*.

"Claim 10 contains the additional statement that the receptacle has an opening through which the pivot pin of the scissors passes. This, it is submitted, is an obvious arrangement. It has the advantage that the pin is a fixed member and the disadvantage that the attachment and removal of the receptacle are rendered more difficult than if clips alone are used. As stated by the board, the function of the receptacle is not modified by the specific securing means used.

"Claim 10 further specifies that the receptacle is supported 'entirely' on one of the blades. This involves no more than the omission of the clip 77 of LaMere, with a corresponding omission of function. It is well settled that this does not amount to invention. (In re Trester, 36 F.2d 133, 17 C.C.P.A. [Patents], 642, In re Morgan, 64 F. 2d 991, 20 C.C.P.A. [Patents], 1080).

"Claim 11 distinguishes from La Mere by calling for two clips instead of one for securing the receptacle to the blade. This is an obvious duplication of parts. It is clearly within the province of the skilled worker to use as many clips as may be found necessary or desirable. This claim also calls for an opening in the receptacle for receiving the pivot pin. As pointed out in connection with claim 10, it is not thought that that feature involves invention.

"Claim 12 adds to claim 11 the statement that the receptacle is supported solely by the blade. That limitation is submitted to be unpatentable for the reasons given above in considering claim 10.

\*      \*      \*      \*      \*      \*

"Claim 15 states that a portion of the receptacle is curved. This is merely a matter of choice, depending on the specific shape of the scissors to which the receptacle is to be attached. The remaining limitations of claim 15 have been discussed above in connection with the other claims, and it seems unnecessary to repeat that discussion here."

As was said in In re Rodman, 161 F.2d 232, 234, 34 C.C.P.A., Patents, 1051, "although the structure, as called for by the appealed claims, differs from the structures disclosed in the references, we think it would be obvious for one skilled in the art, with the reference patents before him, to modify the references in the manner called for by the appealed claims, without the ex-

942

ercise of invention." The same reasoning is equally applicable to the instant case.

The motion by appellant to dismiss the appeal as to claims 9, 13 and 14 is hereby granted, and for the reasons hereinbefore set forth, the decision of the Board of Appeals is affirmed.

Affirmed.

JOHNSON, J., concurs in the conclusion.