## S. S. WHITE DENTAL MFG. CO. v. J. A. FISCHER CO., Inc., et al.

### No. 81.

Circuit Court of Appeals, Second Circuit.

Dec. 5, 1938.

Paul & Paul, of Philadelphia, Pa., and Darby & Darby, of New York City (John Hogg Austin and Henry N. Paul, Jr., both of Philadelphia, Pa., of counsel), for appellant.

Mock & Blum, of New York City, for appellees.

Before L. HAND, SWAN, and CHASE, Circuit Judges.

CHASE, Circuit Judge.

The suit is on claims 1, 2, 8, 9 and 10 of U. S. Patent No. 1,649,310 granted on November 15, 1927 to Emmet A. Joline for a flexible shaft. The plaintiff is the sole owner of the patent. The defendants make and sell flexible shafting. If the claims are valid and they have infringed, they have done so in the Southern District of New York where they do business at the same address.

The patent relates to shafting flexible enough to be suitable for use in transmitting power where conditions are not right for straight line transmission. The shafting is ordinarily enclosed in a flexible casing whose characteristics do not materially affect the flexibility of the shafting itself and permit its use for the transmission of power from a source of supply to an element not in alignment with it. The use of such an assembly as the driving means for an automobile speedometer provides a good practical illustration of its largely accepted use.

Before Joline entered the patent field with his flexible shaft, there were many of them in use. His claimed departure from what was well known and long established practice is confined to the swaging of the terminals of his shaft in such a way that the wire strands out of which the shaft was made were so pressed together that they would not fray or unravel in use. The preferred way to make a flexible shaft of the kind to which Joline was attentive is to wind a plurality of strands of wires closely around a core. It was common practice to solder the ends to prevent unwinding and to put on a ferrule or sleeve to form an attaching tip. Joline said in his specifications: "The principal objects of my invention are to provide a flexible shaft with terminal tips that will efficiently pre-

vent the accidental displacement of the strands of the fabricated shaft, and that will tend greatly to decrease the cost of production of such shaft".

What he did was to swage the ends into the shape wanted for the terminal tips by the use of sufficient pressure to squeeze the wires together so tightly that they remained interlocked in use without the addition of solder or anything else to hold them in place. What he claimed is well enough shown for present purposes by claim 1 which reads: "1. A coiled wire flexible shaft having its terminals swaged, and the wire strands forming the shaft so distorted and interlocked thereby as to of themselves maintain said terminals inert and the shaft intact."

It seems that with the lightening of speedometer parts it has been possible to use Joline's cheaper flexible shaft satisfactorily. It does not, however, appear to be an inventive advance beyond Veeder's United States patent No. 1,421,623 granted July 4, 1922 for a flexible shaft and method of manufacturing it.

Veeder used a shaft of the time honored construction of wires coiled upon a core. Over this he put a closely fitting cylindrical tube and said, "the tube and shaft are then swaged into polygonal form (preferably square) whereby additional security against the uncoiling or opening of the coils of the shaft is obtained and at the same time the end portion of the shaft is given a form which assures driving engagement with the coacting member." This was shown as a way to obviate the use of solder. Veeder recognized that solder would, of course, provide added security against uncoiling but disclosed that its use was not necessary. He said in his specifications: "It is generally desirable to fill with solder the coils of the shaft to be covered before the tube is placed, but the swaging may suffice if the inner as well as the outer coils of wire are distorted so as to prevent uncoiling."

Such a disclosure leaves nothing new in what Joline did. The urge for cheapness of manufacture doubtless prompted the omission of the tube. At most it was but the non-inventive act of leaving off a part used to cover the wire; omitting the function of that part; and relying only upon distortion by swaging to form the terminal tip and prevent uncoiling. Richards v. Chase Elevator Company, 159 U.S. 477, 16 S.Ct. 53, 40 L.Ed. 225; Anchor Cap & Closure Corporation v. Linhardt, 8 Cir., 56 F.2d 542. When the old act of swaging was performed on the ends to such an extent that the wires were "distorted so as to prevent uncoiling" as Veeder stated they might be, Joline but followed Veeder. This did not rise to the level of invention. Kilbourne v. W. Bingham Co., 6 Cir., 50 F. 697. And so all claims in suit are held invalid.

Decree affirmed.